UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAKHIM RASULOVICH SHOIMOV,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, Warden,<br>California City Detention Facility,<br><br>Respondent. | No. 1:25-cv-1603 CSK<br><br>ORDER |

Petitioner, a native of Uzbekistan who entered the United States on February 7, 2023, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner was initially detained by immigration officials and released on his own recognizance on February 9, 2023, pursuant to 8 U.S.C. § 1226. On October 15, 2025, petitioner reported to U.S. Immigration and Customs Enforcement ("ICE") in Baltimore where he was re-detained pursuant to 8 U.S.C. § 1225. Petitioner has been in continuous detention since October 15, 2025. This habeas action concerns petitioner's re-detention. For the reasons which follow, the Court grants the petition for a writ of habeas corpus and orders petitioner's immediate release.

///

///

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 12.)

1

I.     **FACTUAL BACKGROUND**[2]

Petitioner is a native of Uzbekistan.  (ECF No. 1-5 at 2.)  On February 7, 2023, petitioner entered the United States, and a border patrol agent found petitioner approximately 29 miles west of the Calexico Port of Entry and 100 yards north of the United States-Mexico border.  (ECF No. 1-3 at 2; No. 13 at 25.)  Petitioner was determined to be "an alien present in the United States," without permission from the Department of Homeland Security ("DHS"), was arrested on February 7, 2023, and was transported to the San Diego Area Detention Facility.  (ECF No. 1-3 at; 1-5 at 2; 13 at 25.)  He was taken into custody pursuant to 8 U.S.C. § 1226 (Section 236 of the Immigration and Nationality Act ("INA")).  (ECF No. 1-3 at 2; 13 at 25.)  Petitioner expressed a fear of returning to Uzbekistan.  (ECF No. 13 at 26.)

On February 8, 2023, petitioner was issued a Notice to Appear on June 6, 2024 and placed in removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240)[3] as "an alien present in the United States who has not been admitted or paroled" in violation of 8 U.S.C. § 1182(a)(6)(A)(i) (INA § 212(a)(6)(A)(i)).  (ECF No. 1-5 at 2.)  On February 8, 2023, petitioner was released into the United States on his own recognizance, expressly pursuant to 8 U.S.C. § 1226 (INA § 236).  (ECF No. 1-4 at 2.)  Petitioner was issued an Order of Release on Recognizance upon conditions set forth on ICE Form I-220A, which included enrollment in the Alternatives to Detention ("ATD") program.  (ECF No. 1-9 at 2-4.)  Petitioner was warned that failure to comply with the conditions of his release "may result in revocation of [his] release and [his] arrest and detention" by ICE.  (Id.)  Petitioner signed the I-220A form, confirming he had been read and explained the form in Arabic, and had received a copy of the form.  (ECF No. 1-5 at 3, 1-9 at 2.)  Petitioner's Order of Release on Recognizance was not canceled.  (ECF No. 1-9 at 2 (section canceling release order due to failure to comply with release conditions remains blank).)

---

[2] Petitioner filed a verified habeas petition, attaching various documents from his immigration file, which respondent cites to in his response and does not dispute.  A court "may treat the allegations of a verified ... petition [for writ of habeas corpus] as an affidavit."  L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).

[3] By contrast, petitioner was not placed in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

In April 2023, petitioner applied for asylum based on his political opinion, and was issued a receipt notice on May 1, 2023. (ECF No. 1 at 8; 13 at 22.)

On June 6, 2024, which was the date petitioner was ordered to appear in the Notice to Appear issued to petitioner on February 7, 2023 (ECF No. 1-5 at 2), the immigration judge closed the case for failure to prosecute. (ECF No. 1 at 2; 1-6 at 2.)

Petitioner appeared for a routine check-in with ICE officials on October 15, 2025, and was detained.[4] On October 15, 2025, DHS issued petitioner a Notice to Appear and placed in removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) as "an alien present in the United States who has not been admitted or paroled" in violation of 8 U.S.C. § 1182(a)(6)(A)(i) (INA § 212(a)(6)(A)(i)). (ECF No. 1-7 at 2.) This October 15, 2025 Notice to Appear did not charge petitioner with violating any conditions of his release or refer to any alleged release violations. Respondent submitted an unsigned declaration from Deportation Officer Samuel Medina Jr. (ECF No. 13 at 16-18), claiming that petitioner was taken into custody on October 15, 2025 for ATD violations, including "a missed biometric check-in" on March 3, 2023 and "failed home visits" on June 15, 2023, December 27, 2024, and February 21, 2025. (ECF No. 13 at 17.[5]) Petitioner asserts, in his verified habeas petition, that he has complied with all his release conditions. (ECF No. 1 at 8.) It is not necessary to resolve this factual dispute because the issues here are the statutory basis for petitioner's re-detention and whether the requirements of the Due Process Clause have been met.

Petitioner was ordered to appear in immigration court in Hyattsville, Maryland and show cause why he should not be ordered removed. (ECF No. 1-7 at 2.) The hearing was held on November 4, 2025 by video. (ECF No. 13 at 28.) At the hearing, petitioner appeared with counsel and conceded the charge of removability. (Id. at 2.) Based on petitioner's admission, the

---

[4] The petition identifies the detention date as October 22, 2025 (ECF No. 1 at 3, 8), but the documents and briefs submitted by both petitioner and respondent identify October 15, 2025 as the detention date (ECF No. 1-7 at 2; 13 at 2, 21; 14 at 1-2). This apparent typographical error does not impact the Court's analysis.

[5] Though Deportation Officer Medina's declaration is unsigned, the Court exercises its discretion to consider it where petitioner had an opportunity to object in his reply, but did not object. (See ECF No. 14.)

immigration judge sustained the charge of removability and identified Uzbekistan as the country of removal. (Id. at 2, 17.) The government has confirmed that this does not constitute a removal order. (Id. at 2-3 n.3.) Petitioner's asylum application is still pending, and if he prevails on it, he will not be removed. (Id. at 2-3 n.3, 3.) Petitioner's next scheduled immigration hearing is February 3, 2026. (Id. at 2 n.3, 3 n.4, 18.)

Petitioner sought a custody redetermination under 8 C.F.R. § 1236. On November 13, 2025, an immigration judge denied petitioner's request because the immigration judge indicated he "lack[ed] authority to grant bond in this 212(a)(6)(A)(i) matter", citing Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). (ECF No. 1-8 at 2.)

## II.     PROCEDURAL BACKGROUND

On November 20, 2025, petitioner filed his petition for writ of habeas corpus. (ECF No. 1.) On November 25, 2025, the court directed respondents to file a response to the petition within twenty days and ordered that petitioner may file a reply within fourteen days after the response was filed. (ECF No. 8.) On December 12, 2025, this action was reassigned after the parties consented to the jurisdiction of a United States magistrate judge. (ECF No. 12.) Respondents timely filed their response to the petition on December 15, 2025, and petitioner timely filed his reply on December 19, 2025. (ECF Nos. 13, 14.) Briefing is complete. On January 5, 2026, this action was reassigned to this Court due to the unavailability of the previously assigned magistrate judge. (ECF No. 15.)

## III.    PROPER RESPONDENT

The government moves to dismiss all improperly named respondents. In addition to the Warden at the California City Detention Facility, where petitioner is currently detained, petitioner names the Director of the ICE San Francisco Field Office, the Secretary of Homeland Security, the Acting Director of ICE and the United States Attorney General. (ECF No. 1.) "[L]ongstanding practice confirms that in habeas challenges to present physical confinement— 'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held ...." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement

rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." Doe v. Garland, 109 F.4th 1188, 1199 (9th Cir. 2024).

Because petitioner is currently detained at the California City Detention Facility, the Warden, Christopher Chestnut, is the proper respondent. The government's request is granted and the other named respondents are dismissed.

## IV. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## V. DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Petitioner contends that (1) petitioner is not properly detained under 8 U.S.C. § 1225(b)(2)(A) as respondent claims, and instead, petitioner is detained under 8 U.S.C. § 1226(a) and entitled to a pre-deprivation bond hearing; and (2) petitioner's detention violates his constitutional right to due process. Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that petitioner's detention is mandatory under § 1225(b)(2)(A). Respondent does not address petitioner's Due Process Clause challenge.

### A. Applicability of 8 U.S.C. § 1226(a) or 8 U.S.C. § 1225(b)(2)

The issue here is whether petitioner, who has no criminal record and has lived in the

United States since February 2023, is subject to discretionary release as first ordered by immigration officials under § 1226(a) as petitioner contends, or whether, petitioner is now subject to mandatory detention under § 1225(b)(2)(A), as respondent argues. Respondent contends § 1225(b)(2)(A) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention.

The Court concludes that § 1226 applies to petitioner. First, immigration authorities released petitioner on his own recognizance pursuant to § 1226 on February 9, 2023, as expressly provided in the Order of Release on Recognizance issued by DHS. ((ECF No. 1-9 at 2) (issued "[i]n accordance with section 236 of the INA"[6]); see ECF No. 1-4 at 2 (issued "[p]ursuant to the authority contained in section 236" of the INA, releasing petition on his own recognizance).)

This Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondent's interpretation of Sections 1225 and 1226. See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL

---

[6] Section 236 of the INA is codified at 8 U.S.C. § 1226; section 235 of the INA is codified at 8 U.S.C. § 1225.

3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9. As the district court found in Lepe, this Court also rejects the new interpretation of 8 U.S.C. § 1225(b)(2)(A) by respondent, and finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations, because petitioner has resided in this country for over two years and eight months since petitioner was released on his own recognizance pursuant to § 1226, and petitioner's October 2025 arrest and re-detention were not upon his arrival to the United States.

### 2. Due Process

Petitioner argues he has a fundamental liberty interest in freedom from imprisonment. Respondent does not address petitioner's due process claim, (See ECF No. 13.) Respondent's asserted compliance with § 1225(b)(2)(A) does not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due

process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial detention then release in February 2023 on his own recognizance

pursuant to § 1226 is similar because it allowed petitioner to live in Maryland subject to immigration supervision, but outside of custody for over 2.5 years. Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Petitioner's release pursuant to 8 U.S.C. § 1226(a) was premised upon a finding that, at the time of petitioner's release, he was not dangerous nor a flight risk. See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025). In light of all of the forgoing, the Court finds that petitioner's prior release pursuant to 8 U.S.C. § 1226(a) created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4. This Court concludes that petitioner has a protected liberty interest in his release. See Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934 at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to

1  removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also
2  Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in
3  immigration detention context). In applying the Mathews test to a procedural due process claim
4  to a detention under 8 U.S.C. § 1226, the Ninth Circuit explained that "Mathews remains a
5  flexible test that can and must account for the heightened governmental interest in the
6  immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under
7  Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an
8  erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

9  First, petitioner has a clear interest in remaining free from detention. "Freedom from
10 imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at
11 the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing
12 Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty
13 protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's
14 discretion to incarcerate non-citizens is always constrained by the requirements of due process.").
15 For over two years and eight months, petitioner was free from custody before his re-detention.
16 Petitioner worked full-time and became an active member of his community. (ECF No. 14 at 12.)
17 The duration of his conditional release elevates and underscores his interest in liberty. See Pinchi
18 v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner
19 developed "extensive relations of support and interdependence" that "underscore the high stakes
20 of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that
21 petitioner had a substantial liberty interest where he had been released from custody for 18
22 months and was living with his wife, spending time with his mother and other family members,
23 working as a bicycle mechanic, and developing friendships in his community).

24 The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous
25 deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody
26 redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16,
27 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is
28 typically justified under the Due Process Clause only when a noncitizen presents a risk of flight

or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondent does not contend that petitioner is or was a flight risk or a danger to the community. In addition, respondent does not contend that petitioner has a criminal record. Even if petitioner failed to properly check in with ICE or "failed home visits" as alleged, such violations of the terms of his release warrant a pre-detention hearing rather than automatic detention. "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).

Here, petitioner has been detained since October 15, 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter under 8 U.S.C. § 1226 has determined whether petitioner is a flight risk or a danger to the community. Respondent must demonstrate that petitioner's re-detention is reasonably related to a valid government purpose. See Zadvydas, 533 U.S. at 690; see, e.g., Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of . . . [petitioner's] six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford, 2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence).

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondent's interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was previously released on his own recognizance after immigration officials determined he was not a flight risk or danger to the community, he lived in the country for over 2 years and 8 months on release, and he has no criminal record. See Pinchi, 2025 WL

1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036.

## VI.    CONCLUSION AND ORDERS

Accordingly, IT IS HEREBY ORDERED that:

1. Respondents the Director of the ICE San Francisco Field Office, the Secretary of Homeland Security, the Acting Director of ICE and the United States Attorney General are dismissed.

2. The petition for writ of habeas corpus is GRANTED.

3. Respondent is ordered to release petitioner Rakhim Rasulovich Shoimov IMMEDIATELY. Respondent is ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

///

///

4. Within seven days of the date of this order, the parties shall file a joint status report addressing petitioner's status.

Dated: January 6, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/kc/shoi1603.mer